UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| HEATHER C.,<br><br>    Plaintiff,<br><br>vs.<br><br>FRANK BISIGNANO, Commissioner of Social Security,<br><br>    Defendant. | Case No.  1:24-CV-00366-REP<br><br>**MEMORANDUM DECISION AND ORDER** |

    Pending is Petitioner Heather C.'s Petition for Review (Dkt. 1) and an accompanying Brief in Support of Petition to Review (Dkt. 14) appealing the Social Security Administration's final decision finding her not disabled and denying her claim for disability insurance benefits. *See* Pet. for Rev. (Dkt. 1).  This action is brought pursuant to 42 U.S.C. § 405(g).  Having carefully considered the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

## ADMINISTRATIVE PROCEEDINGS

    This case has a complicated procedural history.  Petitioner first filed an application for social security disability income ("SSDI") in October 2019 after she suddenly stopped breathing, went into cardiac arrest, and suffered an anoxic brain injury.  AR 20, 95, 257, 840.  The claim was denied at every level and Petitioner appealed to federal court.  *See Heather C. v. Commissioner of Social Security*, Case No. 1:22-CV-00354-DKG (D. Idaho).  While her appeal

**MEMORANDUM DECISION AND ORDER - 1**

was pending, Petitioner experienced a second episode of severe respiratory distress, requiring hospitalization. AR 980-981, 1450-1451, 1833.

Six months later, on March 20, 2023, the parties filed a stipulated motion to remand. *See* Dkt. 16 in Case No. 22-cv-354. The Court granted this motion, and the case was sent back to the Social Security Administration for a new decision. *See* Dkts. 17-18 in Case No. 22-cv-354.

On March 7, 2024, the ALJ held a new disability hearing. AR 964. After the hearing, the ALJ issued a decision reaffirming his belief that Petitioner's first brain injury did not render her disabled. AR 971-984. The ALJ, however, found that Petitioner's second episode of respiratory distress reduced her health to the point that she could no longer work. *Id.* As a result of these findings, the ALJ (i) granted Petitioner's claim for benefits beginning August 19, 2022, but (ii) denied Petitioner's claim for benefits for the period between September 22, 2019 and August 18, 2022. *Id.*

Petitioner did not appeal this decision to the Appeals Council. After sixty days, the ALJ's decision became the final decision of the Commissioner of Social Security. AR 962.

Having exhausted her administrative remedies, Petitioner filed this case challenging the denial of benefits from 2019-2022. Petitioner raises two points of error. First, Petitioner contends that hypothetical the ALJ presented to the vocational expert omitted two limitations that the ALJ included in Petitioner's residual functional capacity. Pt.'s Br. at 5-8 (Dkt. 14). Second, Petitioner maintains that the ALJ improperly rejected the opinions of her treating provider, the examining psychological consultant, and the state agency reviewers. *Id.* at 8-14.

## STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards. 42 U.S.C. § 405(g); *Trevizo v. Berryhill*, 871 F.3d 664 (9th

Cir. 2017). Findings as to any question of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g). In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *See Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014).

"Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The standard requires more than a scintilla but less than a preponderance. *Trevizo*, 871 F.3d at 674. It "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the Court is to review the record as a whole to decide whether it contains evidence that would allow a person of a reasonable mind to accept the conclusions of the ALJ. *Richardson*, 402 U.S. at 401; *see also Ludwig*, 681 F.3d at 1051. The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Treichler*, 775 F.3d at 1098. Where the evidence is susceptible to more than one rational interpretation, the reviewing court must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record. *Ludwig*, 681 F.3d at 1051. In such cases, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Batson v. Comm'r of Social Sec.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

The decision must be based on proper legal standards and will be reversed for legal error. *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015); *Treichler*, 775 F.3d at 1098. Considerable weight is given to the ALJ's construction of the Social Security Act. *See Vernoff v. Astrue*, 568 F.3d 1102, 1105 (9th Cir. 2009). However, this Court "will not rubber-stamp an administrative

**MEMORANDUM DECISION AND ORDER - 3**

decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

## THE SEQUENTIAL PROCESS

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (20 C.F.R. §§ 404.1520, 416.920) – or continues to be disabled (20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is work activity that is both substantial and gainful. 20 C.F.R. §§ 404.1572, 416.972. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant is engaged in SGA, disability benefits are denied regardless of her medical condition, age, education, and work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in SGA, the analysis proceeds to the second step.

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "not severe" if it does not significantly limit the claimant's physical or mental ability to do basic work activities.

**MEMORANDUM DECISION AND ORDER - 4**

20 C.F.R. §§ 404.1522, 416.922.  If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied.  20 C.F.R. §§ 404.1520(c), 416.920(c).

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded.  20 C.F.R. §§ 404.1520(d), 416.920(d).  If the claimant's impairments neither meet nor equal a listed impairment, the claim cannot be resolved at step three and the evaluation proceeds to step four.  20 C.F.R. §§ 404.1520(e), 416.920(e).

In the fourth step of the evaluation process, the ALJ decides whether the claimant's residual functional capacity ("RFC") is sufficient for the claimant to perform past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  An individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments.  20 C.F.R. §§ 404.1545, 416.945.  An individual's past relevant work is work she performed within the last 15 years, or 15 years prior to the date that disability must be established, if the work was substantial gainful activity and lasted long enough for the claimant to learn to do the job.  20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965.

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of her impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Garrison v. Colvin,* 759 F.3d 995, 1011 (9th

**MEMORANDUM DECISION AND ORDER - 5**

Cir. 2014).  If the claimant can do such other work, she is not disabled; if the claimant cannot do other work and meets the duration requirement, she is disabled.

## THE ALJ'S FINDINGS

The ALJ found that, between September 22, 2019 and August 19, 2022, Petitioner suffered from the following severe impairments: history of myocardial infarction with residual left upper extremity weakness, residual vision issues and neurocognitive limitations, anxiety, and depression.  AR 967.  The ALJ determined that these impairments limited Petitioner's ability to engage in work-related activities in a variety of manners, including that Petitioner could not work at a production rate pace, could only perform simple and routine tasks, and was limited in her visual acuity.  AR 971-972.  The ALJ concluded that these limitations would prevent Petitioner from returning to her past work as a dental assistant or financial teller.  AR 982.  The ALJ found, however, that Petitioner's limitations would not prevent her from performing an alternative range of light jobs, including working as a marker, routing clerk, or mail clerk.  AR 983.  The ALJ, therefore, found that Petitioner was not disabled between September 22, 2019 and August 19, 2022.  AR 984.

## DISCUSSION

To satisfy the Commissioner's burden at Step Five, the ALJ called a vocational expert (a "VE") to testify.  As is common practice, the ALJ posed several hypothetical questions to the VE regarding the job options for an individual with limitations similar to Petitioner's.  AR 1029-1043; *see also Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999) (describing how ALJs use VEs to "translate[] . . . factual scenarios into realistic job market probabilities").  For such testimony to have evidentiary value, an ALJ must ensure that the hypothetical on which the ALJ ultimately relies accurately incorporates *all* of the claimant's limitations.  *Tackett,* 180 F.3d at

**MEMORANDUM DECISION AND ORDER - 6**

1101 (explaining that an "ALJ's depiction of the claimant's disability" to the VE "must be accurate, detailed, and supported by the medical record").  In other words, a hypothetical cannot form a basis for the denial of benefits unless it matches the RFC.  *See Simpson v. Berryhill*, 717 F. App'x 670, 672 (9th Cir. 2017) (unpublished) (holding that an ALJ "erred in posing a hypothetical question to the vocational expert that did not precisely match [the claimant's] residual functional capacity).

As Petitioner points out, the hypothetical that the ALJ used fails this relatively straightforward test.  When talking to the VE, the ALJ inquired about a hypothetical person with the following visual limitations:

> [T]his hypothetical person has visual limitations; however, they can recognize and avoid ordinary hazards in the workplace such as boxes on the floor, doors ajar or people or vehicles approaching.  They can only occasionally view computer screens up to one-third of the day, . . . . but not for the rest of the day, but up to one-third of the day throughout the day.  They can also differentiate between the size, shape and color of small objects, screws, nuts and bolts.

AR 1031.  The VE responded that such a person would be able to work as a marker, a routing clerk, or a mail clerk.  AR 1032-1033.

In his decision denying benefits, the ALJ purports to rely on this testimony.  AR 983.  The problem is that the ALJ found that Petitioner had an additional visual limitation that the ALJ never discussed with the VE.  Specifically, the ALJ found that Petitioner "was limited to jobs that would require only occasional near acuity."[1]  AR 972.  As Petitioner points out, this is a critical omission.  All the jobs the VE identified as options are classified as jobs that require

---

[1] The Selected Characteristics of Occupations ("SCO") defines "near acuity" as clarity of vision at 20 inches or less.  *See* Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles, Appx. C (1993).

**MEMORANDUM DECISION AND ORDER - 7**

frequent, rather than occasional,[2] near acuity. *See* Dictionary of Occupational Titles ("DOT") 209.587-34, 222.687-022, and 209.687-026 and Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles, Part A (1993).

Despite this mismatch, Respondent argues that the ALJ's omission of the "occasional near acuity" limitation was not erroneous. As best the Court can tell, Respondent's position is that the ALJ was using the "near acuity" limitation as a shorthand for the specific, visual limitations that the ALJ listed in more detail to the VE. Res.'s Br. at 3 (Dkt. 16.) This argument is demonstrably unsound.

In the RFC, the ALJ found that Petitioner had the following visual limitations:

> She was limited to jobs that would require only occasional near acuity. She could recognize and avoid ordinary hazards such as boxes on the floor, doors ajar, or approaching people or vehicles. She was unable to read very small print but would be able to read an ordinary newspaper or book print. She could occasionally view computer screens and was able to determine the differences in shape, color, or small objects such as screws, nuts, or bolts.

AR 972. If Respondent's reading of the record was correct, most of this list would be redundant. The Court would be skeptical of interpreting an RFC in such a manner even in the most ambiguous circumstances. Here, however, the body of the ALJ's decision refutes Respondent's position. In discussing the RFC, the ALJ listed the "near acuity" restriction as one of several vision-related limitations. AR 974 (explaining that the RFC "takes into consideration the claimant's vision impairment with several vision-related limitations such as avoiding unguarded moving mechanical parts, avoiding working at heights, limitations for jobs that require only

---

[2] For physical activities, like seeing, the SCO describes how frequently that activity must be performed for a specific job category using four ratings: (1) never; (2) occasionally (meaning up to 1/3 of the workday); (3) frequently (meaning from 1/3 to 2/3 of the workday); or (4) constantly (meaning 2/3 or more or the workday). *See* Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles, Identification Key (1993).

**MEMORANDUM DECISION AND ORDER - 8**

occasional near acuity, avoiding ordinary hazards, reading ordinary newspaper or book print, viewing a computer screen, and only occasional reading of newspapers and occasional computer use"). It was clear error for the ALJ to exclude this limitation from the VE hypothetical. *See Tackett,* 180 F.3d at 1101 and *Simpson*, 717 F. App'x at 672.

The Court agrees with Petitioner that this error was harmful. The DOT raises a presumption as to job classification requirements. *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995). While this presumption is rebuttable, deviations from the DOT cannot be made silently. It is the responsibility of the ALJ to resolve any conflict between the DOT and the VE testimony by asking the expert to explain the variance and then determining "whether the vocational expert's explanation for the conflict is reasonable." *Zavalin v. Colvin*, 778 F.3d 842, 846 (9th Cir. 2015). Contrary to what Respondent suggests, that did not happen. The VE was never asked, and did not volunteer any information about, whether an individual who was limited to jobs requiring occasional near acuity could work as a marker, routing clerk, or mail clerk. AR 1030-1043. To the extent the VE's testimony touched on this issue, it supports Petitioner's assertion of error. AR 1033 (averring that the jobs of marker, routing clerk, and mail clerk are "basically performed" in the manner in which they are described in the DOT).

In summary, the limitations in the RFC presumptively preclude Petitioner from working as a marker, routing clerk or mail clerk. Because these are the only three occupations that the ALJ identified at Step Five, the ALJ's finding of non-disability cannot stand. This case must be remanded for further proceedings.[3]

---

[3] Having found that remand is warranted based on this issue, the Court declines to address Plaintiff's remaining issues. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008).

**MEMORANDUM DECISION AND ORDER - 9**

**ORDER**

Based on the foregoing, Petitioner's Petition for Review and the Brief in Support of Petition to Review (Dkts. 1 & 14) are **GRANTED**, and the decision of the Commissioner is **REVERSED** and **REMANDED** for further proceedings consistent with this decision.

DATED: June 30, 2025

Raymond E. Patricco
Chief U.S. Magistrate Judge